**GRAHAM ARCHITECTURAL PRODUCTS CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–3063.

United States Court of Appeals, Third Circuit.

March 31, 1983.

As Amended on Denial of Rehearing and Rehearing In Banc May 20, 1983.

SUR PETITION FOR REHEARING

Before SEITZ, Chief Judge, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER, BECKER and ROSENN, Circuit Judges.

The petition for rehearing filed by petitioner in the above entitled case, 697 F.2d 534, having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Circuit Judge GARTH would grant rehearing for the reasons expressed in his panel dissent.

A statement by ROSENN, Circuit Judge, joined in by SEITZ, Chief Judge is appended hereto. A statement of Circuit Judge ADAMS' Sur Denial of Rehearing is also attached.

STATEMENT OF ROSENN, CIRCUIT JUDGE, JOINED IN BY SEITZ, CHIEF JUDGE, IN ORDER DENYING REHEARING

The Company asserts that, by declining to review the election order, we are requiring an "unnecessary" election. It claims that this holding conflicts with the fundamental policy favoring speedy resolution of representation disputes. But, far from "requiring" anything, we simply are declining to review an interlocutory election order, in accordance with the statutory scheme enacted by Congress. We expect that the Board will now proceed to reconsider its election order in light of our holdings on the unfair labor practices, and if the election is indeed "unnecessary" the Board no doubt will vacate the election order. The Company's view of our jurisdiction assumes that, unless we intervene now, the Board will go forward with an election that might be unwarranted, knowing that such an election in all likelihood will be invalidated by this court in subsequent proceedings. This fear that the Board may act irrationally and arbitrarily is not a sound basis for us to interfere with the Board's primary authority in election matters and exercise jurisdiction over an interlocutory order.*

---

* We note that the Majority has not held that the election in this case was untainted. Rather, we upheld two of the six unfair labor practices found by the Board. Although there is no rea-son for us to believe that the interrogation of employees Reisinger and Oberdick tainted the election, this is a question that the Board never had occasion to consider. We believe it is

## STATEMENT OF ADAMS, CIRCUIT JUDGE, SUR DENIAL OF REHEARING

The majority of the panel has concluded that an order of the National Labor Relations Board directing that a second representation election be held cannot be reviewed by this Court, even where the Court has reversed four of the six unfair labor practice findings that served as the predicate for the re-run election order. The panel has determined that it is without power to set aside the Board's order for the re-run election, even though, as they concede, the results of that election will be, in all probability, meaningless. The panel did uphold the Board's determination that the company had committed two unfair labor practices. But these violations involved only two of the company's 180 workers, and, according to the panel's opinion, "[t]here is no evidence that their interrogation contaminated the rest of the bargaining unit." 697 F.2d 534, 543 (3rd Cir.1983). Therefore, that election should not have been set aside. And this Court, on review of the second election, will almost assuredly overturn the second election as improperly authorized inasmuch as the first election was valid.

Under the position taken by the majority, this second review can come about only after the union is certified, the employer refuses to bargain, and the Board declares that the company has committed an unfair labor practice by that refusal. The second election, the Board proceedings following it, and the appeal to this Court will entail substantial expenditures of time and money on the part of everyone concerned. Yet this extended and expensive exercise will serve no useful purpose. As a result, this Court in a year or two may well be called upon to do what, in effect, it already has

ascertained is necessary, namely, to uphold the validity of the first election. Because I have concluded that the result reached by the majority of the panel is not required by the applicable statute, nor in accordance with traditional restraints on this Court's ability to review matters before it, I believe that this matter should be reconsidered by the full Court.[1]

The panel treats this case as one involving two separate orders, one final and one interlocutory. It then proclaims that it is without jurisdiction to review the interlocutory order of the Board that directs that a second election be held. This, however, is not an accurate characterization of the situation. The Board issued a single order in this case, finding the company liable for six unfair labor practices and ordering a multifaceted remedy. As part of the order the Board directed that a second election be conducted. There is no doubt, however, that this Court has jurisdiction to review as a final order unfair labor practice determinations, and "to make and enter a decree enforcing, modifying, and enforcing as so modified, or *setting aside in whole or in part* the order of the Board." 29 U.S.C. § 160(f) (emphasis added).

By parsing the single final order entered by the Board into two parts, the panel has used an approach developed by this Court in considering *interlocutory* appeals pursuant to 28 U.S.C. § 1292(a)(1). *See Kershner v. Mazurkiewicz,* 670 F.2d 440 (3d Cir.1982) (in banc). In *Kershner,* we considered whether an appellate court could exercise "pendent" jurisdiction to review a denial of class certification in conjunction with a Section 1292 review of a denial of a preliminary injunction. We held that such pendent review was improper because Section 1292 was itself an exception to the "final order" rule,

proper to leave this decision to the Board in the first instance.

1. It has been suggested that this Court need not review the order for a re-run election at this time because the Board is likely to rescind the order itself. While there is a possibility that the Board will take corrective action in this

matter on its own, although no such assurance exists, that does not resolve the issue whether this Court, as a general matter, has the power to review the type of order presented here. For the reasons set forth in this statement, I believe that we do have that power.

and as such, the scope of review pursuant to that exception should be construed narrowly.

That is not the situation presented by the case now before the Court. The appeal here is not taken under an exception to the final order doctrine, but rather under the final order doctrine itself. The Board has issued a final order resolving these unfair labor practice charges, and the fact that a portion of the remedy imposed in that single order is a re-run election does not change the plain language of the statute which gives a court of appeals authority to deny enforcement "in whole" to the order if the court believes it necessary to do so.

Even if it were proper to treat the decision of the Board in this case as two separate orders, I believe that, under the circumstances presented, we do have jurisdiction to review the election order. There have been occasions when this Court has refused to reach the merits of a controversy for reasons that, to some, may seem to serve little purpose other than to delay a final resolution of a particular case. *See Beaty v. Patton,* 700 F.2d 110 (3d Cir.1983) (remand to consider the issue of "deliberate bypass" of state procedures necessary before court may reach merits of habeas petition); *Williams v. Red Bank Bd. of Educ.,* 662 F.2d 1008 (3d Cir.1981) (plaintiff must complete state court litigation before prosecuting federal civil rights claim arising from same facts); *Marshall v. Whittaker Corp.,* 610 F.2d 1141 (3d Cir.1979) (statute requires company to exhaust administrative remedies before seeking judicial relief). This type of resolution, however, is generally required by the Constitution, by a particular statute, or by the notions of comity upon which our federal system is based. These external constraints which are placed on our ability to reach the merits of a controversy serve a specific purpose. Federal courts are courts of limited jurisdiction, authorized to adjudicate only those matters permitted to us by Article III of the Constitution and by the Congress. We may not consider cases in a way that exceeds the scope of our constitutional or statutory authority, or fails to maintain a proper balance between the state and federal court systems.

The position taken by the majority in the proceeding before us does not appear to be rooted in any of those external limitations. The issue of appealability of Board election orders is, in the first instance, a judicial interpretation of the Act, and the rule concerning the timing of review of Board orders was developed by the courts in a context quite different from that presented here. As Judge Garth's dissenting opinion points out, Section 160(f) of the N.L.R.A. does not make clear how "final order" is to be defined with regard to re-run election orders incidental to unfair labor practice determinations. Cases such as *Boire v. Greyhound,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) and *American Federation of Labor v. National Labor Relations Board,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940), were decided with concern for the delay which pre-election appeals would cause;[2] they did not address the question whether a court having proper jurisdiction over the issues underlying a re-election order should refuse to decide the question whether the second election should be held. *See* at 544–546 (Garth, J., dissenting). Having once placed a judicial gloss on a statute, we must always be careful to examine the reasons underlying the first decision in order to make certain that we are justified before we apply the second layer

---

**2.** In *Boire,* the Supreme Court noted that Congress, in considering the Taft-Hartley Act, rejected an amendment allowing direct appeal of election results because "such provision would permit dilatory tactics in representation proceedings." 93 Cong.Rec. 6444 (1947) (statement by Senator Taft), *quoted in Boire v. Greyhound,* 376 U.S. 473, 479, 84 S.Ct. 894, 897, 11 L.Ed.2d 849 (1964). In the present case, this fear of delay is not applicable, since, as the majority concedes, the appeal from the unfair labor practice determination is properly before us and no additional time would be necessary to resolve the question concerning the re-run election.

444

of varnish to that legislative act. When the reason for a particular interpretation has ended, so must the interpretation. By relying on prior decisions that may be based on policy concerns not present in the case now before the court, the majority appears to be elevating form over substance, and relying on a rule even though the rationale for that rule does not apply in the present situation. Justice Cardozo eloquently reminded us many years ago that when concepts are "developed with merciless disregard of consequences to the limit of their logic," they become "tyrants rather than servants" of those who employ them. *The Paradoxes of Legal Science,* p. 61.

For the foregoing reasons, I believe the Court en banc should review this case to make certain that the admittedly skewed result ordered by the majority is mandated by some necessary, or at least some appropriate, jurisprudential concept.

HUNTER and WEIS, Circuit Judges, join in this statement.